MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
RAMIRO VAZQUEZ, DANIEL TORRES
RAMOS, JUAN OLIVARES DE LA TORRE,
RIGOBERTO ATLATENCO AMARO,
MARIO  CAMPOS, ABRAHAM
GUTIERREZ OLIVARES, MARCOS
ALCANTARA HERNANDEZ, LUIS
MIGUEL BARRERA PEREZ, PEDRO
LAZARO FORTIS, WILLIAM PALADINES,
JUAN PALACIOS, RICARDO TRUJILLO
GOMEZ, CARMELLO RAMIREZ
MARTINEZ, JOSE IVAN ISLAS RAMIREZ,
and MIGUEL ANGEL GALICIA JIMENEZ,
*individually and on behalf of others similarly*
*situated,*

|  | |
|---|---|
| | **COMPLAINT** |
| | |
| | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b)** |
| | |
| | **ECF Case** |

                                *Plaintiffs*,

        -against-

COOKUNITY, LLC (D/B/A COOKUNITY),
MATEO MARIETTI, MATIAS
SEREBRINSKY, and LUCIA CISILOTTO,

                                *Defendants.*
--------------------------------------------------------X

        Plaintiffs Ramiro Vazquez, Daniel Torres Ramos, Juan Olivares de la torre, Rigoberto

Atlatenco Amaro, Mario Campos, Abraham Gutierrez Olivares, Marcos Alcantara Hernandez,

Luis Miguel Barrera Perez, Pedro Lazaro Fortis, William Paladines, Juan Palacios, Ricardo

Trujillo Gomez, Carmello Ramirez Martinez, Jose Ivan Islas Ramirez, and Miguel Angel Galicia

Jimenez, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against CookUnity, LLC (d/b/a CookUnity), ("Defendant Corporation"), Mateo Marietti, Matias Serebrinsky, and Lucia Cisilotto, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants CookUnity, LLC (d/b/a CookUnity), Mateo Marietti, Matias Serebrinsky, and Lucia Cisilotto.

2.      Defendants own, operate, or control a meal delivery service/food distributer, whose principal executive office is located at 1 North 4th Place Apt. 34G, Brooklyn, New York, 11249 under the name "CookUnity".

3.      Upon information and belief, individual Defendants Mateo Marietti, Matias Serebrinsky, and Lucia Cisilotto, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the meal delivery service/food distributer as a joint or unified enterprise.

4.      Plaintiffs have been employed as delivery workers for the meal delivery service/food distributer, whose principal executive office was located at 1 North 4th Place Apt. 34G, Brooklyn, New York, 11249.

5.      Defendants have failed to maintain accurate recordkeeping of the hours worked and have failed to pay Plaintiffs appropriately for any hours worked.

6.      In or around 2018, Plaintiffs worked for Defendants without appropriate minimum wage compensation for the hours that they worked. Instead Plaintiffs were paid by the amount of deliveries they were delivering instead of being paid an hourly rate, specifically they were receiving $4.00 per delivery when they made over a certain amount of deliveries per day.

7.      Furthermore, Defendants have repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      In addition, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and have made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

9.      Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

10.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work  without providing the minimum wage compensation required by federal and state law and regulations.

11.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

12.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

14.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, and

Defendants operate a meal delivery service located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

15.     Plaintiff Ramiro Vazquez ("Plaintiff Vazquez" or "Mr. Vazquez") is an adult individual residing in Bronx County, New York.

16.     Plaintiff Vazquez has been employed by Defendants at CookUnity from approximately October 2016 until on or about February 2017 and from January 2018 until the present date.

17.     Plaintiff Daniel Torres Ramos ("Plaintiff Torres" or "Mr. Torres") is an adult individual residing in Queens County, New York.

18.     Plaintiff Torres was employed by Defendants at CookUnity from approximately September 2016 until on or about February 2017.

19.     Plaintiff Juan Olivares de la Torre ("Plaintiff Olivares de la Torre" or "Mr. Olivares de la Torre") is an adult individual residing in Queens County, New York.

20.     Plaintiff Olivares de la Torre was employed by Defendants at CookUnity from approximately March 2015 until on or about November 2015.

21.     Plaintiff Rigoberto Atlatenco Amaro ("Plaintiff Amaro" or "Mr. Amaro") is an adult individual residing in Queens County, New York.

22.     Plaintiff Amaro was employed by Defendants at CookUnity from approximately September 2015 until on or about August 2016.

23.     Plaintiff Mario Campos ("Plaintiff Campos" or "Mr. Campos") is an adult individual residing in Bronx County, New York.

24.     Plaintiff Campos was employed by Defendants at CookUnity from approximately January 2015 until on or about April 2016.

25.     Plaintiff Abraham Gutierrez Olivares ("Plaintiff Gutierrez" or "Mr. Gutierrez") is an adult individual residing in Bronx County, New York.

26.     Plaintiff Gutierrez was employed by Defendants at CookUnity from approximately August 2013 until on or about November 2016.

27.     Plaintiff Marcos Alcantara Hernandez ("Plaintiff Alcantara" or "Mr. Alcantara") is an adult individual residing in Bronx County, New York.

28.     Plaintiff Alcantara was employed by Defendants at CookUnity from approximately December 2015 until on or about April 2017.

29.     Plaintiff Luis Miguel Barrera Perez ("Plaintiff Barrera" or "Mr. Barrera") is an adult individual residing in Bronx County, New York.

30.     Plaintiff Barrera was employed by Defendants at CookUnity from approximately June 2015 until on or about August 2, 2018.

31.     Plaintiff Pedro Lazaro Fortis ("Plaintiff Lazaro" or "Mr. Lazaro") is an adult individual residing in Queens County, New York.

32.     Plaintiff Lazaro was employed by Defendants at CookUnity from approximately October 2016 until on or about December 2017.

33.     Plaintiff William Paladines ("Plaintiff Paladines" or "Mr. Paladines") is an adult individual residing in Queens County, New York.

34.     Plaintiff Paladines was employed by Defendants at CookUnity from approximately May 2016 until on or about July 2016.

35.     Plaintiff Juan Palacios ("Plaintiff Palacios" or "Mr. Palacios") is an adult individual residing in Bronx County, New York.

36.     Plaintiff Palacios was employed by Defendants at CookUnity from approximately February 2014 until on or about November 2016.

37.     Plaintiff Ricardo Trujillo Gomez ("Plaintiff Trujillo" or "Mr. Trujillo") is an adult individual residing in Queens County, New York.

38.     Plaintiff Trujillo was employed by Defendants at CookUnity from approximately February 2014 until on or about March 2016.

39.     Plaintiff Carmello Ramirez Martinez ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in Queens County, New York.

40.     Plaintiff Ramirez was employed by Defendants at CookUnity from approximately October 2016 until on or about September 4, 2018.

41.     Plaintiff Jose Ivan Islas Ramirez ("Plaintiff Islas" or "Mr. Islas") is an adult individual residing in Westchester County, New York.

42.     Plaintiff Islas was employed by Defendants at CookUnity from approximately August 20, 2015 until on or about September 2016 and then again from November 2016 until on or about May 2017.

43.     Plaintiff Miguel Angel Galicia Jimenez ("Plaintiff Galicia" or "Mr. Galicia") is an adult individual residing in Kings County, New York.

44.     Plaintiff Galicia was employed by Defendants at CookUnity from approximately January 2016 until on or about November 2016.

*Defendants*

45.     At all relevant times, Defendants own, operate, or control a meal delivery service/food distributer, whose principal executive office is located at 1 North 4th Place Apt. 34G, Brooklyn, New York, 11249 under the name "CookUnity".

46.     Upon information and belief, CookUnity, LLC (d/b/a CookUnity) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1 North 4th Place Apt. 34G, Brooklyn, New York, 11249.

47.     Defendant Mateo Marietti is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mateo Marietti is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Mateo Marietti possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

48.     Defendant Matias Serebrinsky is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Matias Serebrinsky is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Matias Serebrinsky possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

49.     Defendant Lucia Cisilotto is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Lucia Cisilotto is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Lucia Cisilotto possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

50.     Defendants operate a meal delivery service/food distributer that serves multiple neighborhoods in and around New York City.

51.     Individual Defendants, Mateo Marietti, Matias Serebrinsky, and Lucia Cisilotto, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

52.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

53.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

54.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

55.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

56.     Upon information and belief, Individual Defendants Mateo Marietti, Matias Serebrinsky, and Lucia Cisilotto operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

  a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

  b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

  c) transferring assets and debts freely as between all Defendants,

  d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

  e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

  f) intermingling assets and debts of their own with Defendant Corporation,

  g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

  h) Other actions evincing a failure to adhere to the corporate form.

57.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs,

have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

In every year from 2012 to 2018, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

58.     In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items such as food and other supplies that are used on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

59.     Plaintiffs are both current and former employees of Defendants who ostensibly have been employed as delivery workers. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Ramiro Vazquez*

60.     Plaintiff Vazquez has been employed by Defendants from approximately October 2016 until on or about February 2017 and from January 2018 until the present date.

61.     Defendants have employed Plaintiff Vazquez as a delivery worker.

62.     Plaintiff Vazquez has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

63.     Plaintiff Vazquez's work duties have required neither discretion nor independent judgment.

64.     From approximately October 2016 until on or about February 2017, Plaintiff Vazquez worked 4 hours a day 4 days a week (typically 16 hours per week).

65.     From approximately January 2018 until the present date, Plaintiff Vazquez has worked approximately 4 hours a day 3 days a week (typically 12 hours per week).

66.     From October 2016 until on or about January 2018, Defendants paid Plaintiff Vazquez his wages in cash.

67.     From approximately January 2018 until the present date, Defendants have paid Plaintiff Vazquez his wages through direct deposit.

68.     From approximately October 2016 until the present date, Defendants have paid Plaintiff Vazquez $60 per day and an additional $4.00 more anytime he made over 15 deliveries.

69.     On one occasion Plaintiff Vazquez was not paid all of his pay for one work week. Defendants still owe Plaintiff Vazquez for that week of work.

70.     Defendants have never granted Plaintiff Vazquez any breaks or meal periods of any kind.

71.     In addition Defendants have deprived Plaintiff Vazquez of all his tips.

72.     Plaintiff Vazquez has not been required to keep track of his time, nor to his knowledge, have the Defendants utilize any time tracking device such as punch cards, that accurately has reflected his actual hours worked.

73.     On a number of occasions, Defendants have required Plaintiff Vazquez to sign a document, the contents of which he has not been allowed to review in detail.

74.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Vazquez regarding overtime and wages under the FLSA and NYLL.

75.     Defendants have never provided Plaintiff Vazquez an accurate statement of wages, as required by NYLL 195(3).

76.     Defendants have never given any notice to Plaintiff Vazquez, in English and in Spanish (Plaintiff Vazquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.     Defendants have required Plaintiff Vazquez to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a chain and lock.

*Plaintiff Daniel Torres Ramos*

78.     Plaintiff Torres was employed by Defendants from approximately September 2016 until on or about February 2017.

79.     Defendants employed Plaintiff Torres as a delivery worker.

80.     Plaintiff Torres regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

81.     Plaintiff Torres's work duties required neither discretion nor independent judgment.

82.     From approximately September 2016 until on or about October 2016, Plaintiff Torres worked approximately 4 hours per day 3 days a week and 5 hours per day on Thursdays and on Fridays (typically 22 hours per week).

83.     From approximately October 2016 until on or about February 2017, Plaintiff Torres worked 4 days a week, 2 days a week he worked 5 hours per day and 2 days a week he worked  4 hours per day (typically 18 hours per week).

84.     Throughout his employment, Defendants paid Plaintiff Torres his wages in cash.

85.     From approximately September 2016 until on or about February 2017, Defendants paid Plaintiff Torres $60 per day.

86.     Defendants never granted Plaintiff Torres any breaks or meal periods of any kind.

87.     Defendants withheld all of Plaintiff Torres's daily tips (approximately $100 per day).

88.     Plaintiff Torres was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

89.     On a number of occasions, Defendants required Plaintiff Torres to sign a document, the contents of which he was not allowed to review in detail.

90.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Torres regarding overtime and wages under the FLSA and NYLL.

91.     Defendants did not provide Plaintiff Torres an accurate statement of wages, as required by NYLL 195(3).

92.     Defendants did not give any notice to Plaintiff Torres, in English and in Spanish (Plaintiff Torres's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

93.     Defendants required Plaintiff Torres to purchase "tools of the trade" with his own funds—including bicycles and 2 sets of lights.

*Plaintiff Juan Olivares de la Torre*

94.     Plaintiff Olivares de la Torre was employed by Defendants from approximately March 2015 until on or about November 2015.

95.     Defendants employed Plaintiff Olivares de la Torre as a delivery worker.

96.     Plaintiff Olivares de la Torre regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.     Plaintiff Olivares de la Torre's work duties required neither discretion nor independent judgment.

98.     From approximately March 2015 until on or about November 2015, Plaintiff Olivares de la Torre worked from approximately 5:00 p.m. until on or about 9:30 p.m., 2 days per week and from approximately 5:00 p.m. until on or about 11:00 p.m., 3 days per week (typically 27 hours per week).

99.     Throughout his employment, Defendants paid Plaintiff Olivares de la Torre his wages in cash.

100.    From approximately March 2015 until on or about November 2015, Defendants paid Plaintiff Olivares de la Torre $60 per shift.

101.    Defendants never granted Plaintiff Olivares de la Torre any breaks or meal periods of any kind.

102.    Defendants withheld all of Plaintiff Olivares de la Torre's tips.

103.    Plaintiff Olivares de la Torre was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

104.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Olivares de la Torre regarding overtime and wages under the FLSA and NYLL.

105.    Defendants did not provide Plaintiff Olivares de la Torre an accurate statement of wages, as required by NYLL 195(3).

106.    Defendants did not give any notice to Plaintiff Olivares de la Torre, in English and in Spanish (Plaintiff Olivares de la Torre's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107.    Defendants required Plaintiff Olivares de la Torre to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, lights for the bicycle and bicycle repairs.

*Plaintiff Rigoberto Atlatenco Amaro*

108.     Plaintiff Amaro was employed by Defendants from approximately September 2015 until on or about August 2016.

109.     Defendants employed Plaintiff Amaro as a delivery worker.

110.     Plaintiff Amaro regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

111.     Plaintiff Amaro's work duties required neither discretion nor independent judgment.

112.     From approximately September 2015 until on or about August 2016, Plaintiff Amaro worked from approximately 5:00 p.m. until on or about 9:00 p.m., Monday through Friday (typically 20 hours per week).

113.     Throughout his employment, Defendants paid Plaintiff Amaro his wages in cash.

114.     From approximately September 2015 until on or about August 2016, Defendants paid Plaintiff Amaro $60 per shift.

115.     Plaintiff Amaro's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

116.     For example, Defendants required Plaintiff Amaro to work an additional half an hour past his scheduled departure time two to three days per week, and did not pay him for the additional time he worked.

117.     Defendants never granted Plaintiff Amaro any breaks or meal periods of any kind.

118.     Defendants withheld all of Plaintiff Amaro's tips.

119.     Plaintiff Amaro was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

120.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Amaro regarding overtime and wages under the FLSA and NYLL.

121.     Defendants did not provide Plaintiff Amaro an accurate statement of wages, as required by NYLL 195(3).

122.     Defendants did not give any notice to Plaintiff Amaro, in English and in Spanish (Plaintiff Amaro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

123.     Defendants required Plaintiff Amaro to purchase "tools of the trade" with his own funds—including a bicycle, a helmet and bicycle repairs.

*Plaintiff Mario Campos*

124.     Plaintiff Campos was employed by Defendants from approximately January 2015 until on or about April 2016.

125.     Defendants employed Plaintiff Campos as a delivery worker.

126.     Plaintiff Campos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

127.     Plaintiff Campos's work duties required neither discretion nor independent judgment.

128.     From approximately January 2015 until on or about April 2016, Plaintiff Campos worked from approximately 5:00 p.m. until on or about 9:00 p.m. to 9:30 p.m., Mondays through Fridays (typically 20 to 22.5 hours per week).

129.     throughout his employment, Defendants paid Plaintiff Campos his wages in cash.

130.     From approximately January 2015 until on or about April 2016, Defendants paid Plaintiff Campos $60 per shift.

131.    Plaintiff Campos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

132.    For example, Defendants required Plaintiff Campos to work additional time past his scheduled departure time, and did not pay him for the additional time he worked.

133.    Defendants never granted Plaintiff Campos any breaks or meal periods of any kind.

134.    Defendants withheld all of Plaintiff Campos's tips.

135.    Plaintiff Campos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

136.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Campos regarding overtime and wages under the FLSA and NYLL.

137.    Defendants did not provide Plaintiff Campos an accurate statement of wages, as required by NYLL 195(3).

138.    Defendants did not give any notice to Plaintiff Campos, in English and in Spanish (Plaintiff Campos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

139.    Defendants required Plaintiff Campos to purchase "tools of the trade" with his own funds—including a bicycle, bicycle repairs, lights, helmets, lock and chain and vests.

*Plaintiff Abraham Gutierrez Olivares*

140.    Plaintiff Gutierrez was employed by Defendants from approximately August 2013 until on or about November 2016.

141.    Defendants employed Plaintiff Gutierrez as a delivery worker.

142.     Plaintiff Gutierrez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

143.     Plaintiff Gutierrez's work duties required neither discretion nor independent judgment.

144.     From approximately August 2013 until on or about November 2016, Plaintiff Gutierrez worked from approximately 5p.m. or 5:30 p.m. until on or about 9:00 p.m. or 9:30 p.m., 5 days per week (typically 20 to 22.5 hours per week).

145.     From approximately August 2013 until early 2016, Defendants paid Plaintiff Gutierrez his wages in cash.

146.     From early 2016 until the end of his employment, Defendants paid Plaintiff Gutierrez his wages by personal check.

147.     From approximately August 2013 until on or about January 2014, Defendants paid Plaintiff Gutierrez $50 per day.

148.     From approximately January 2014 until on or about November 2016, Defendants paid Plaintiff Gutierrez $60 per day.

149.     Defendants never granted Plaintiff Gutierrez any breaks or meal periods of any kind.

150.     Defendants withheld all of Plaintiff Gutierrez's tips.

151.     Plaintiff Gutierrez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

152.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gutierrez regarding overtime and wages under the FLSA and NYLL.

153.    Defendants did not provide Plaintiff Gutierrez an accurate statement of wages, as required by NYLL 195(3).

154.    Defendants did not give any notice to Plaintiff Gutierrez, in English and in Spanish (Plaintiff Gutierrez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

155.    Defendants required Plaintiff Gutierrez to purchase "tools of the trade" with his own funds—including a bicycle, bicycle maintenance and supplies.

*Plaintiff Marcos Alcantara Hernandez*

156.    Plaintiff Alcantara was employed by Defendants from approximately December 2015 until on or about April 2017.

157.    Defendants employed Plaintiff Alcantara as a delivery worker.

158.    Plaintiff Alcantara regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

159.    Plaintiff Alcantara's work duties required neither discretion nor independent judgment.

160.    From approximately December 2015 until on or about April 2017, Plaintiff Alcantara worked from approximately 5:00 p.m. until on or about 9:00 p.m., 2 or 3 days a week and from approximately 5:00 p.m. until on or about 8:30 p.m., 2 or 3 days a week (typically 18.5 to 19 hours per week).

161.    Throughout his employment, Defendants paid Plaintiff Alcantara his wages in cash.

162.    From approximately December 2015 until on or about April 2017, Defendants paid Plaintiff Alcantara $60 per day.

163.    Plaintiff Alcantara's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

164.    For example, Defendants frequently required Plaintiff Alcantara to work an additional 30 minutes to 1 hour past his scheduled departure time, and did not pay him for the additional time he worked.

165.    Defendants never granted Plaintiff Alcantara any breaks or meal periods of any kind.

166.    Defendants withheld all of Plaintiff Alcantara's tips.

167.    Plaintiff Alcantara was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

168.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alcantara regarding overtime and wages under the FLSA and NYLL.

169.    Defendants did not provide Plaintiff Alcantara an accurate statement of wages, as required by NYLL 195(3).

170.    Defendants did not give any notice to Plaintiff Alcantara, in English and in Spanish (Plaintiff Alcantara's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

171.    Defendants required Plaintiff Alcantara to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, an air pump, a chain and lock and 2 bicycle lights.

*Plaintiff Luis Miguel Barrera Perez*

172.    Plaintiff Barrera was employed by Defendants from approximately June 2015 until on or about August 2, 2018.

173.    Defendants employed Plaintiff Barrera as a delivery worker.

174.    Plaintiff Barrera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

175.    Plaintiff Barrera's work duties required neither discretion nor independent judgment.

176.    From approximately June 2015 until on or about August 2, 2018, Plaintiff Barrera worked from approximately 4:00 p.m. until on or about 9:00 p.m., 5 days a week (typically 25 hours per week).

177.    From approximately June 2015 until on or about December 2017, Defendants paid Plaintiff Barrera his wages in cash.

178.    From approximately January 2018 until the end of his employment, Defendants paid Plaintiff Barrera his wages through PayPal.

179.    From approximately June 2015 until on or about early 2018, Defendants paid Plaintiff Barrera $60 per day.

180.    From approximately early 2018 until on or about August 2, 2018 Defendants paid Plaintiff at a rate of $4.00 per delivery every time he delivered more than 15 deliveries per day. However, if Plaintiff made less than 15 deliveries per day he was paid $60 per day.

181.    Defendants never granted Plaintiff Barrera any breaks or meal periods of any kind.

182.    Defendants withheld all of Plaintiff Barrera's tips.

183.    Plaintiff Barrera was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

184.    On a number of occasions, Defendants required Plaintiff Barrera to sign a document, the contents of which he was not allowed to review in detail.

185.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Barrera regarding overtime and wages under the FLSA and NYLL.

186.    Defendants did not provide Plaintiff Barrera an accurate statement of wages, as required by NYLL 195(3).

187.    Defendants did not give any notice to Plaintiff Barrera, in English and in Spanish (Plaintiff Barrera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

188.    Defendants required Plaintiff Barrera to purchase "tools of the trade" with his own funds—including a bicycle, a helmet and a vest.

### *Plaintiff Pedro Lazaro Fortis*

189.    Plaintiff Lazaro was employed by Defendants from approximately October 2016 until on or about December 2017.

190.    Defendants employed Plaintiff Lazaro as a delivery worker.

191.    Plaintiff Lazaro regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

192.    Plaintiff Lazaro's work duties required neither discretion nor independent judgment.

193.    From approximately October 2016 until on or about December 2017, Plaintiff Lazaro worked from approximately 5:00 p.m. until on or about 9:00 p.m., 6 days a week for 3 weeks a month and 5 days a week for 1 week out of the month (typically 20 to 24 hours per week).

194.    From approximately October 2016 until on or about October 2017, Defendants paid Plaintiff Lazaro his wages in cash.

195.    From approximately October 2017 until on or about December 2017, Defendants paid Plaintiff Lazaro his wages by personal check.

196.    From approximately October 2016 until on or about August 2017, Defendants paid Plaintiff Lazaro $60 per shift.

197.    From approximately August 2017 until on or about December 2017, Defendants paid Plaintiff Lazaro $67 per shift.

198.    Plaintiff Lazaro's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

199.    For example, Defendants required Plaintiff Lazaro to work an additional 10 to 15 minutes past his scheduled departure time one day a week, and did not pay him for the additional time he worked.

200.    Defendants never granted Plaintiff Lazaro any breaks or meal periods of any kind.

201.    Defendants withheld all of Plaintiff Lazaro's tips.

202.    Plaintiff Lazaro was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

203.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lazaro regarding overtime and wages under the FLSA and NYLL.

204.    Defendants did not provide Plaintiff Lazaro an accurate statement of wages, as required by NYLL 195(3).

205.    Defendants did not give any notice to Plaintiff Lazaro, in English and in Spanish (Plaintiff Lazaro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff William Paladines*

206.    Plaintiff Paladines was employed by Defendants from approximately May 2016 until on or about July 2016.

207.    Defendants employed Plaintiff Paladines as a delivery worker.

208.    Plaintiff Paladines regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

209.    Plaintiff Paladines's work duties required neither discretion nor independent judgment.

210.    From approximately May 2016 until on or about July 2016, Plaintiff Paladines worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., 5 days a week (typically 30 to 32.5 hours per week).

211.    Throughout his employment, Defendants paid Plaintiff Paladines his wages in cash.

212.    From approximately May 2016 until on or about July 2016, Defendants paid Plaintiff Paladines $60 per day.

213.    Defendants never granted Plaintiff Paladines any breaks or meal periods of any kind.

214.    Defendants withheld all of Plaintiff Paladines's tips.

215.    Plaintiff Paladines was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

216.    On a number of occasions, Defendants required Plaintiff Paladines to sign a document, the contents of which he was not allowed to review in detail.

217.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Paladines regarding overtime and wages under the FLSA and NYLL.

218.    Defendants did not provide Plaintiff Paladines an accurate statement of wages, as required by NYLL 195(3).

219.    Defendants did not give any notice to Plaintiff Paladines, in English and in Spanish (Plaintiff Paladines's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

220.    Defendants required Plaintiff Paladines to purchase "tools of the trade" with his own funds—including 2 vests, a helmet, and a delivery bag.

*Plaintiff Juan Palacios*

221.    Plaintiff Palacios was employed by Defendants from approximately February 2014 until on or about November 2016.

222.    Defendants employed Plaintiff Palacios as a delivery worker.

223.    Plaintiff Palacios regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

224.    Plaintiff Palacios's work duties required neither discretion nor independent judgment.

225.    From approximately February 2014 until on or about November 2016, Plaintiff Palacios worked from approximately 5:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 25 hours per week).

226.    From approximately February 2014 until on or about 2015, Defendants paid Plaintiff Palacios his wages in cash.

227.    From approximately 2015 until on or about November 2016, Defendants paid Plaintiff Palacios his wages by personal check.

228.    From approximately February 2014 until on or about November 2016, Defendants paid Plaintiff Palacios $60 per day.

229.    Defendants never granted Plaintiff Palacios any breaks or meal periods of any kind.

230.    Defendants withheld all of Plaintiff Palacios's tips.

231.    Plaintiff Palacios was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

232.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Palacios regarding overtime and wages under the FLSA and NYLL.

233.    Defendants did not provide Plaintiff Palacios an accurate statement of wages, as required by NYLL 195(3).

234.    Defendants did not give any notice to Plaintiff Palacios, in English and in Spanish (Plaintiff Palacios's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

235.    Defendants required Plaintiff Palacios to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, lights and a set of lock and chain.

*Plaintiff Ricardo Trujillo Gomez*

236.    Plaintiff Trujillo was employed by Defendants from approximately February 2014 until on or about March 2016.

237.    Defendants employed Plaintiff Trujillo exclusively as a delivery worker from in or around February 2014 until early 2015. Then in or around early 2015 he was employed as a dispatcher who also made deliveries once or twice a month.

238.    Plaintiff Trujillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

239.    Plaintiff Trujillo's work duties required neither discretion nor independent judgment.

240.    From approximately February 2014 until on or about 2015, Plaintiff Trujillo worked from approximately 5:00 p.m. until on or about 9:00 p.m., 5 days per week (typically 20 hours per week).

241.    From approximately 2015 until on or about March 2016, Plaintiff Trujillo worked from approximately 5:00 p.m. until on or about 12:00 a.m., 5 days per week (typically 35 hours per week).

242.    From approximately February 2014 until early 2015, Defendants paid Plaintiff Trujillo his wages in cash.

243.    From approximately late 2015 until on or about March 2016, Defendants paid Plaintiff Trujillo his wages by personal check.

244.    From approximately February 2014 until on or about Early 2015, Defendants paid Plaintiff Trujillo $60 per day.

245.    From approximately Early 2015 until on or about March 2016, Defendants paid Plaintiff Trujillo $600 per week.

246.    Defendants never granted Plaintiff Trujillo any breaks or meal periods of any kind.

247.    Defendants withheld all of Plaintiff Trujillo's tips.

248.    Plaintiff Trujillo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

249.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Trujillo regarding overtime and wages under the FLSA and NYLL.

250.     Defendants did not provide Plaintiff Trujillo an accurate statement of wages, as required by NYLL 195(3).

251.     Defendants did not give any notice to Plaintiff Trujillo, in English and in Spanish (Plaintiff Trujillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

252.     Defendants required Plaintiff Trujillo to purchase "tools of the trade" with his own funds—including a bicycle and bicycle maintenance.

*Plaintiff Carmello Ramirez Martinez*

253.     Plaintiff Ramirez was employed by Defendants from approximately October 2016 until on or about September 4, 2018.

254.     Defendants employed Plaintiff Ramirez as a delivery worker.

255.     Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

256.     Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

257.     From approximately October 2016 until on or about April 2017, Plaintiff Ramirez worked from approximately 5:00 p.m. until on or about 9:00 p.m., 6 days a week (typically 24 hours per week).

258.     From approximately May 2017 until on or about June 2018, Plaintiff Ramirez worked from approximately 4:30 p.m. until on or about 8:30 p.m., 6 days a week (typically 24 hours per week).

259.    From approximately June 2018 until on or about September 4, 2018 Plaintiff Ramirez worked from approximately 4:30 p.m. until on or about 8:30 p.m. 5 days a week (typically 20 hours per week).

260.    From approximately October 2016 until on or about October 2017, Defendants paid Plaintiff Ramirez his wages by personal check.

261.    From approximately October 2017 until on or about September 4, 2018, Defendants paid Plaintiff Ramirez his wages by direct deposit.

262.    From approximately October 2016 until on or about April 2017, Defendants paid Plaintiff Ramirez $60 per day.

263.    From approximately May 2017 until on or about January 2018, Defendants paid Plaintiff Ramirez $11.00 per hour and an additional $1.75 per delivery.

264.    From approximately January 2018 until on or about March 2018, Defendants paid Plaintiff Ramirez $11.00 per hour and $2.25 per delivery unless Plaintiff made deliveries past 100th street, then the delivery fee would be $11.00 per hour and $5.00 per delivery.

265.    From approximately March 2018 until on or about September 4, 2018, Defendants paid Plaintiff Ramirez $4.00 per delivery if he made more than 15 deliveries per day, however if he made 15 deliveries or less he would be paid $60 per day.

266.    Defendants never granted Plaintiff Ramirez any breaks or meal periods of any kind.

267.    Defendants withheld all of Plaintiff Ramirez's tips.

268.    Plaintiff Ramirez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

269.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

270.     Defendants did not provide Plaintiff Ramirez an accurate statement of wages, as required by NYLL 195(3).

271.     Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

272.     Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including two bicycles, tires, a helmet, lights and a chain and lock.

*Plaintiff Jose Ivan Islas Ramirez*

273.     Plaintiff Islas was employed by Defendants from approximately August 20, 2015 until on or about September 2016 and then from November 2016 until on or about May 2017.

274.     Defendants employed Plaintiff Islas as a delivery worker.

275.     Plaintiff Islas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

276.     Plaintiff Islas' work duties required neither discretion nor independent judgment.

277.     From approximately August 20, 2015 until on or about September 2016, Plaintiff Islas worked from approximately 5:00 p.m. until on or about 9:00 p.m. to 9:40 p.m., 5 days a week (typically 20 to 23 hours per week).

278.     From approximately November 2016 until on or about May 2017, Plaintiff Islas worked from approximately 11:00 a.m. until on or about 3:00 p.m. to 3:30 p.m., 5 days per week (typically 20 to 22.5 hours per week).

279.    From approximately August 20, 2015 until on or about March 2017, Defendants paid Plaintiff Islas his wages in cash.

280.    From approximately March 2017 until on or about May 2017, Defendants paid Plaintiff Islas his wages by personal check.

281.    From approximately August 2015 until on or about May 2017, Defendants paid Plaintiff Islas $60 per day.

282.    Plaintiff Islas' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

283.    For example, Defendants required Plaintiff Islas to work an additional 30 to 40 minutes past his scheduled departure time regularly, and did not pay him for the additional time he worked.

284.    Defendants never granted Plaintiff Islas any breaks or meal periods of any kind.

285.    Defendants withheld all of Plaintiff Islas' tips.

286.    Plaintiff Islas was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

287.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Islas regarding overtime and wages under the FLSA and NYLL.

288.    Defendants did not provide Plaintiff Islas an accurate statement of wages, as required by NYLL 195(3).

289.    Defendants did not give any notice to Plaintiff Islas, in English and in Spanish (Plaintiff Islas' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

290.    Defendants required Plaintiff Islas to purchase "tools of the trade" with his own funds—including bicycle maintenance, a vest and a helmet.

*Plaintiff Miguel Angel Galicia Jimenez*

291.    Plaintiff Galicia was employed by Defendants from approximately January 2016 until on or about November 2016.

292.    Defendants employed Plaintiff Galicia as a delivery worker.

293.    Plaintiff Galicia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

294.    Plaintiff Galicia's work duties required neither discretion nor independent judgment.

295.    From approximately January 2016 until on or about July 2016, Plaintiff Galicia worked from approximately 5:00 p.m. until on or about 11:00 p.m., Mondays through Saturdays (typically 36 hours per week).

296.    From approximately July 2016 until on or about November 2016, Plaintiff Galicia worked from approximately 11:00 a.m. until on or about 4:00 p.m., Mondays through Fridays (typically 25 hours per week).

297.    From approximately January 2016 until on or about October 2016, Defendants paid Plaintiff Galicia his wages in cash.

298.    From approximately October 2016 until on or about November 2016, Defendants paid Plaintiff Galicia his wages by personal check.

299.    From approximately January 2016 until on or about November 2016, Defendants paid Plaintiff Galicia $60 per day.

300.    Plaintiff Galicia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

301.    For example, Defendants required Plaintiff Galicia to work frequently 1 hour past his scheduled departure time, and did not pay him for the additional time he worked.

302.    Defendants never granted Plaintiff Galicia any breaks or meal periods of any kind.

303.    Defendants withheld all of Plaintiff Galicia's tips.

304.    Plaintiff Galicia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

305.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galicia regarding overtime and wages under the FLSA and NYLL.

306.    Defendants did not provide Plaintiff Galicia an accurate statement of wages, as required by NYLL 195(3).

307.    Defendants did not give any notice to Plaintiff Galicia, in English or in Spanish (Plaintiff Galicia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

308.    At all times relevant to this Complaint in or around 2018, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work without paying them appropriate minimum wage as required by federal and state laws.

309.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

310.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

311.    Defendants habitually have required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

312.    Defendants have failed to inform Plaintiffs who received tips that Defendants intend to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

313.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice has included depriving delivery workers of all of the tips earned during the course of employment.

314.    Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

315.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

316.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

317.    On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail.

318.    Defendants have paid Plaintiffs their wages in cash and by personal check or direct deposit.

319.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

320.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

321.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

322.    Defendants' unlawful conduct is intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated former workers.

323.    Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

324.    Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour,

shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

325.     Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

326.     At all relevant times, Plaintiffs and other members of the FLSA Class have been similarly situated in that they have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and willfully failing to keep records under the FLSA.

327.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

328.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

329.     At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of

their employment, and determined the rate and method of any compensation in exchange for their employment.

330.     At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

331.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

332.     In or around 2018 Defendants have failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

333.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

334.     Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

335.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

336.     At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

337.     In or around 2018 Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

338.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

339.    Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

340.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

341.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

342.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

343.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

344.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages;

name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

345.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

346.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

347.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

348.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

349.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

350.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

351.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities

received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

352.     Defendants have unlawfully misappropriated all of Plaintiffs' tips that have been received from customers.

353.     Defendants have knowingly and intentionally retained all of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs have been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

354.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

355.     Defendants have not paid Plaintiffs on a regular weekly basis, in violation of NYLL §191.

356.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)      Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)      Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(e)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)      Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)      Declaring that Defendants have violated the timely payment provisions of the NYLL as to Plaintiffs;

(i)      Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(j)      Declaring that Defendants' violations of the provisions of the NYLL are willful as to Plaintiffs;

(k)      Awarding Plaintiffs damages for the amount of unpaid minimum wage, and for any improper deductions or credits taken against wages as applicable

(l)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(m)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(o)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(p)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       October 11, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
         Michael Faillace [MF-8436]
         60 East 42nd Street, Suite 4510
         New York, New York 10165
         Telephone: (212) 317-1200
         Facsimile: (212) 317-1620
         *Attorneys for Plaintiffs*